UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SUSAN MAYNARD,

Plaintiff,

-against-

MONTEFIORE MEDICAL CENTER, MARCIA LUTZ, VAYOLA NELSON, BEVERLEY WINTER, PEARLINE DOUGLAS, DAVIDA HARRIS,

Defendants.

No. 18-CV-8877 (LAP)

OPINION & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is the motion for summary judgment filed by Defendants Montefiore Medical Center ("Montefiore"), Marcia Lutz, Vayola Nelson, Beverly Wynter, Pearline Douglas, and Davida Harris (collectively, "Defendants").[1] Plaintiff Susan Maynard opposes the motion.[2] For the reasons below, the motion for summary judgment is GRANTED.

## I. Background

"Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New

[1] (See Defendants' Notice of Motion for Summary Judgment, dated Mar. 23, 2020 [dkt. no. 52]; see also Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defs. Br."), dated Mar. 23, 2020 [dkt. no. 54]; Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment, dated May 14, 2020 [dkt. no. 68].)

[2] (See Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. Br."), dated Apr. 29, 2020 [dkt. no. 63].)

York . . . requires a party moving for summary judgment to submit a statement of the allegedly undisputed facts on which the moving party relies, together with citation to the admissible evidence of record supporting each such fact." Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003). Defendant submitted such a statement, along with accompanying declarations and exhibits.[3]

In the non-moving party's responsive statement, he or she must then "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts." LOCAL CIV. R. 56.1(b). Each statement in the response "must be followed by citation to evidence which would be admissible." Id. 56.1(d). If the non-moving party "fails to submit a responsive statement, then the facts set forth in the moving party's 56.1 statement are deemed admitted." Truitt v. Salisbury Bank & Tr. Co., No. 18-CV-8386 (NSR), 2020 WL 4208452, at *1 (S.D.N.Y. July 21, 2020).

[3] (See Local Rule 56.1 Statement of Montefiore Medical Center ("Defs. 56.1"), dated Mar. 23, 2020 [dkt. no. 53]; see also Declaration of David Brodksy, dated Mar. 19, 2020 [dkt. no. 55]; Declaration of Marcia Lutz, dated Mar. 17, 2020 [dkt. no. 56]; Declaration of Maureen Scanlan, dated Mar. 12, 2020 [dkt. no. 57]; Declaration of Janice Reyes-Tutiven, dated Mar. 12, 2020 [dkt. no. 58]; Declaration of Sean A. Malley, dated Mar. 23, 2020 [dkt. no. 59].)

Plaintiff's Rule 56.1 Statement is not up to snuff. It repeatedly offers conclusory denials--including thirty-five responses offering only a solitary "deny"--without any citations to admissible evidence. (See Plaintiff's Response to Defendants' Local Rule 56.1 Statement, dated Apr. 29, 2020 [dkt. no. 62].) Instead, Plaintiff chooses to rely on competing declarations and exhibits to challenge Defendants' Rule 56.1 Statement. (See Declaration of Susan Maynard ("Maynard Decl."), dated Apr. 27, 2020 [dkt. no. 64]; Declaration of Christopher J. Berlingieri, dated Apr. 29, 2020 [dkt. no. 66].) Accordingly, "[b]ecause Plaintiff failed to comply with Local Rule 56.1, the Court will deem as admitted those facts set forth in Defendants' 56.1 Statement, to the extent they are supported by the record." Truitt, 2020 WL 4208452, at *1.

**a. Plaintiff's Employment**

Montefiore hired Plaintiff in 2008 as a per diem nurse on the Eighth Floor of its Children's Hospital ("CHAM 8"). (Defs. 56.1 ¶ 1.) Montefiore hired Plaintiff as a full-time CHAM 8 nurse in January 2014. (Id. ¶ 2.) CHAM 8 treats patients between the ages of three weeks and twenty-one years for a wide variety of health issues, (id. ¶ 3), and Plaintiff's responsibilities included, inter alia, "admitting patients, discharge planning, starting IVs, drawing blood, and reporting to doctors," (id. ¶ 5). During Plaintiff's tenure, she was

supervised by Marcia Lutz, the Administrative Nurse charged with "overseeing all [n]urses on CHAM 8." (Id. ¶ 6.)

**b. Plaintiff's Medical Leave and Temporary Shift Change**

In January 2016, Plaintiff requested medical leave to recover from surgery, which Montefiore granted. (Id. ¶ 57.) Of that leave, Plaintiff asserts "that she asked for three specific days . . . to be paid through accumulated sick time, but that these days were instead designated as 'voluntary time off.'" (Id. ¶ 58.) Ms. Lutz recalls things differently: She remembers "that Plaintiff specifically requested that these three days be deemed unpaid voluntary sick time." (Id. ¶ 59.) Although Plaintiff was not paid for those days, she chose not to file a grievance with her union. (Id. ¶ 60.)

In April 2016, shortly after Plaintiff returned, CHAM 8 nurses were required to attend State-mandated training. (Id. ¶ 61.) Because Montefiore could only offer the training during daytime hours, Ms. Lutz determined that she needed to rotate shifts temporarily so that all the CHAM 8 nurses could attend the required sessions. (Id. ¶ 62.) Four nurses were rotated onto the night shift for a period of four weeks. (Id.) Plaintiff, who primarily worked daytime shifts, was among those rotated. (Id. ¶¶ 4, 62.) The other three nurses rotated "did not possess a disability," and none had taken "medical leave prior to rotating." (Id. ¶¶ 63-64.) Once the trainings

concluded, all four nurses resumed their normal daytime shifts. (Id. ¶ 65.)

### c. Complaints About Plaintiff

Soon after returning to the dayshift, Plaintiff's employment took a turn for the worse. Between May and October 2017, Montefiore received four complaints regarding Plaintiff from four different individuals, three of whom were mothers of CHAM 8 patients. (See id. ¶¶ 7-37.)

On May 12, 2017, Montefiore received a complaint from the mother of a CHAM 8 patient. (Id. ¶ 7.) That complaint alleged that Plaintiff had "called security on an African American man" who was the "grandfather of a patient." (Id.) The complaint also stated that, after calling security, Plaintiff yelled "this only happens to black people; this don't happen to white people," and "[t]his isn't Nazi Germany." (Id. ¶ 8.) Two employees reported that Plaintiff also referred to the grandfather as a "500-pound black man." (Id. ¶ 12.) As a result, Montefiore investigated Plaintiff for violations of its Non-Discrimination and Harassment Policy ("the Policy").[4] Ms. Lutz led the investigation, interviewing the complainant and another family member of the grandfather as well as taking

[4] (Defs. 56.1 ¶¶ 11, 66, 71.) The Policy encourages employees to report incidents promptly and provides several avenues through which to do so. (Id. ¶¶ 69-70.)

statements from four employees.  (Id. ¶¶ 9, 11.)  All the
witnesses confirmed the allegations.  (Id. ¶ 10).

One week later, Ms. Lutz met with Plaintiff to discuss the
complaint.  (Id. ¶ 13.)  Joan Curry, Administrative Nurses
Manager, Candice Sering, Union Representative, and Collette
Dobbins, Union Delegate, also attended the meeting.  (Id.)
Plaintiff denied the allegations, although Ms. Lutz's notes
indicate that Plaintiff did not provide any witnesses or
substance to refute the charges.  (Id. ¶ 14).  The same parties
reconvened for a disciplinary meeting on August 16, 2017, at
which Plaintiff received a written warning.  (Id. ¶ 15.)  That
warning detailed the specific rules and policies Plaintiff had
violated and cautioned that additional violations would result
in further discipline or possible termination.  (Id. ¶¶ 16-17.)

The very next day, Montefiore received a second complaint
from another mother of a CHAM 8 patient, which stated that
Plaintiff had argued with a physician's assistant in front of
the patient's family regarding who was more qualified to insert
an IV.  (Id. ¶ 18.)  The complaint then asserted that Plaintiff
used excessive force to insert the IV, causing the patient to
cry out in pain.  (Id. ¶ 19.)  After the mother requested
another nurse, Plaintiff left without calling for one.  (Id.
¶ 20.)  Like the first complaint, Ms. Lutz investigated by
speaking to the complainant and to CHAM 8 employees.  (Id.

¶¶ 21-22.)  The investigation corroborated the latest allegations.  (Id. ¶ 23.)

Just two weeks later, Montefiore received a third complaint from a different CHAM 8 mother, this time asserting that Plaintiff had used inappropriate language.  (Id. ¶ 24.) Specifically, the complaint alleged that Plaintiff had said (1) "I can't stand it here these black and Spanish people come here and they take everything"; (2) "[t]hey gave me the African Lion King back there and she stinks"; and (3) "Spanish patients eat up the diapers, they think it's the welfare office."  (Id. ¶ 25.)  Given the frequency of the complaints against Plaintiff, Ms. Lutz alerted Janice Reyes, Senior Labor and Employee Relations Manager, of the allegations in early September 2017. (Id. ¶ 26.)

In response, Ms. Reyes and Ms. Lutz investigated the third complaint.  (Id. ¶ 27.)  Both interviewed the complainant, who confirmed that she overheard Plaintiff make the statements at the nursing station near her child's hospital room.  (Id. ¶¶ 28-29.)  Moreover, Ms. Lutz also spoke with CHAM 8 employees, who corroborated the complainant's account.  (Id. ¶ 30.)  Shortly thereafter, Ms. Lutz informed David Brodksy, Senior Vice President of Labor and Employee Relations, about the complaints, (id. ¶ 31), and he suggested placing Plaintiff on paid administrative leave pending further investigation, (id. ¶ 32).

On October 16, 2017, Montefiore received a final complaint, which was filed anonymously with Montefiore's Department of Labor and Employee Relations. (Id. ¶ 33.) That complaint alleged that Plaintiff had stated "can you believe that black guy is talking to me that way?" to an African American employee. (Id. ¶ 33.) The complaint also stated that Plaintiff, when discussing a patient, had attributed the patient's "behavior to the patient's ethnic last name and because she was inbreeded." (Id. ¶ 34.) Ms. Reyes asked Ms. Lutz for help investigating the most recent complaint, and Ms. Lutz took statements from the employee and another CHAM 8 worker. (Id. ¶¶ 35-36.) Both corroborated the complaint's account of events. (Id. ¶ 36.)

**d. Plaintiff's Termination**

On November 17, 2017, Plaintiff met with Ms. Reyes, Ms. Lutz, and Marlena Fontes, a union representative, regarding the latter three complaints. (Id. ¶ 38.) Plaintiff denied the conduct underlying the complaints but could not explain why so many similar complaints had been made. (Id. ¶¶ 39-40.) Instead, for the first time, Plaintiff asserted that her co-workers had made several discriminatory remarks to her. (Id. ¶¶ 41-43.) In response, Montefiore placed Plaintiff on paid administrative leave pending further investigation. (Id. ¶ 44.)

In early December 2017, Ms. Reyes provided copies of the complaints and investigative files to Maureen Scanlan, Vice

President of Nursing, Freddy Cabrera, Chief Human Resources Officer, Susan Green-Lorenzen, System Senior Vice-President, and Mr. Brodsky (collectively, "the Committee"). (Id. ¶¶ 45-46.) Given the seriousness of Plaintiff's conduct, Ms. Reyes recommended terminating Plaintiff. (Id. ¶¶ 47-48.) The Committee had the sole power to terminate a nurse. (Id. ¶ 45.) After meeting and reviewing the relevant files, the Committee decided to terminate Plaintiff's employment and informed Ms. Reyes of its decision. (Id. ¶¶ 49-52, 54.) On December 29, 2017, Ms. Reyes, Ms. Lutz, and Ms. Fontes informed Plaintiff that she was being fired based on the complaints against her. (Id. ¶¶ 55-56.)

**e. This Action**

On February 23, 2018, Plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (First Amended Complaint ("FAC"), dated Jan. 8, 2019 [dkt. no. 30] ¶ 3.) On July 7, 2018, Plaintiff received right-to-sue letters from the EEOC. (Id. ¶ 4.) On September 27, 2018, Plaintiff filed the instant action, asserting, inter alia, claims under (1) Title VII of the Civil Rights Act of 1964, (2) 42 U.S.C. § 1981, (3) the Americans with Disabilities Act ("ADA"), (4) the Family Medical Leave Act ("FMLA"), (5) the New York State Human Rights Law ("NYSHRL"), and (6) the New York City Human Rights Law ("NYCHRL"). (Id. ¶¶ 37-90.)

## II. Legal Standards

### a. Summary Judgment

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the burden to show the absence of a dispute as to a material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party may discharge its summary judgment burden in "two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d Cir. 2017).

In assessing the record, the Court "must view the evidence in the light most favorable to the [non-moving] party," Tolan v. Cotton, 572 U.S. 650, 657 (2014) (quotation marks omitted), and "resolve all ambiguities and draw all reasonable inferences against the movant," Caronia v. Philip Morris USA, Inc., 715 F.3d 417, 427 (2d Cir. 2013). At the same time, "the mere existence of some alleged factual dispute" is not enough to prevent summary judgment--the dispute must be material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A

fact is "material" only if it "might affect the outcome of the suit under the governing law." Id. at 248. Finally, "conclusory statements or mere allegations are not sufficient to defeat a summary judgment motion." Johnson v. Killian, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam) (alterations omitted).

**b. Discrimination**

Plaintiff asserts claims for discrimination under (1) Title VII, (2) 42 U.S.C. § 1981, (3) the NYSHRL, (4) the NYCHRL, (5) the ADA, and (6) the FMLA. (See FAC ¶¶ 37-41, 45-47, 51-61, 65-68, 72-78, 82-90.) In cases like this one where there is not direct evidence of discrimination, those claims are governed by the canonical burden-shifting framework announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973).[5] That inquiry proceeds in three steps. First, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.[6] Next, if the plaintiff meets her burden, the

[5] See Kirkland v. Cablevision Sys., 760 F.3d 223, 225 (2d Cir. 2014) (Title VII); Ruiz v. Cnty. of Rockland, 609 F.3d 486, 491 (2d Cir. 2010) (§ 1981); Spiegel v. Schulmann, 604 F.3d 72, 80 (2d Cir. 2010) (NYSHRL and NYCHRL); McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013) (ADA). Plaintiff's FMLA interference claim is not governed by McDonnell Douglas, which makes sense because discriminatory intent is not an element of such a claim. See Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 424 (2d Cir. 2016).

[6] See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media, 140 S. Ct. 1009, 1019 (2020). "Th[at] burden is not a heavy one." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 107 (2d Cir. 2010).

burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its actions. See Comcast, 140 S. Ct. at 1019. Finally, if the defendant offers such a reason, the burden shifts back to the plaintiff who must show that the proffered explanation is pretextual. See id.

**1. Title VII & NYSHRL**

Claims under Title VII and the NYSHRL are treated as "analytically identical."[7] To establish a prima facie claim of discrimination under those statutes, Plaintiff must show that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 83 (2d Cir. 2015); accord Spiegel, 604 F.3d at 80.

**2. Section 1981**

To make out a prima facie discrimination claim under § 1981, Plaintiff must establish the following: "(1) [she] is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the

[7] Lenzi v. Systemax, Inc., 944 F.3d 97, 107 n.7 (2d Cir. 2019). "In August 2019, the NYSHRL was amended" in several ways, but the events underlying this case preceded those amendments. Farmer v. Shake Shack Enters., LLC, 473 F. Supp. 3d 309, 334 n.9 (S.D.N.Y. 2020).

statute." Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam). As for the first prong, the Supreme Court has held that § 1981 also applies "to racial discrimination against white persons." McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 287 (1976).

**3. NYCHRL**

"[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (cleaned up). "Thus, even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards." Id. Although the first two elements of a NYCHRL discrimination claim mirror those under Title VII, important differences exist as to the third and fourth elements. See, e.g., Gorman v. Covidien, LLC, 146 F. Supp. 3d 509, 530 (S.D.N.Y. 2015).

For "the third prong of a prima facie case of discrimination under the NYCHRL, a plaintiff must simply show that she was treated differently from others in a way that was more than trivial, insubstantial, or petty." Kellman v. Metro. Transp. Auth., 8 F. Supp. 3d 351, 379 (S.D.N.Y. 2014)

(underlining added). Unlike Title VII or the NYSHRL, "the NYCHRL does not require that an employment action taken against a plaintiff be 'materially adverse' . . . to establish a prima facie case of discrimination." Gorman, 146 F. Supp. 3d at 530. Moreover, the fourth prong of a prima facie case is established so long as "a member of a protected class was treated differently than a worker who was not a member of that protected class." Leon v. Columbia Univ. Med. Ctr., No. 11 Civ. 8559 (NSR), 2013 WL 6669415, at *11 (S.D.N.Y. Dec. 17, 2013). In short, to defeat summary judgment, Plaintiff "need only show differential treatment--that she [wa]s treated 'less well'--because of a discriminatory intent." Mihalik, 715 F.3d at 110.

**4. ADA**

"To establish a prima facie case of discrimination under the ADA, a plaintiff must show . . . that: (1) h[er] employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of h[er] job, with or without reasonable accommodation; and (4) [s]he suffered adverse employment action because of h[er] disability." Woolf v. Strada, 949 F.3d 89, 93 (2d Cir. 2020).

**5. FMLA**

"[T]o prevail on a" FMLA interference claim, "a plaintiff must establish: 1) that she is an eligible employee under the

FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." Graziadio, 817 F.3d at 424.

**c. Retaliation**

In addition to her discrimination claims, Plaintiff also asserts retaliation claims under the same statutes. (See FAC ¶¶ 42-44, 48-58, 62-64, 69-74, 79-90.) The retaliation claims are also governed by McDonnell Douglas's tripart framework.[8]

**1. Title VII, § 1981, NYSHRL, & ADA**

"To make out a prima facie case of retaliation" under Title VII, § 1981, the NYSHRL, and the ADA, "a plaintiff must make four showings: that (1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity."[9] Title VII, § 1981, and ADA claims "must be

[8] See Littlejohn v. City of New York, 795 F.3d 297, 315 (2d Cir. 2015) (Title VII and § 1981); Summa v. Hofstra Univ., 708 F.3d 115, 125 (2d Cir. 2013) (NYSHRL); Schaper v. Bronx Lebanon Hosp. Ctr., 408 F. Supp. 3d 379, 394 (S.D.N.Y. 2019) (NYCHRL); Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (ADA); Graziadio, 817 F.3d at 429 (FMLA).

[9] Summa, 708 F.3d at 125 (quotation marks omitted and underlining added) (Title VII and NYSHRL); accord Fincher v.
(continued on following page)

proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."[10] Although the Court of Appeals has not held explicitly that but-for causation governs NYSHRL claims, it has implicitly applied that standard on several occasions. See Smith v. N.Y. & Presbyterian Hosp., 440 F. Supp. 3d 303, 340 n.22 (S.D.N.Y. 2020) (collecting cases).

**2. NYCHRL**

The NYCHRL imposes an identical standard to the one above, save for two important exceptions. First, "the plaintiff need not prove any adverse employment action; instead, she must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." Benzinger v. Lukoil Pan Americas, LLC, 447 F. Supp. 3d 99, 129 (S.D.N.Y. 2020) (cleaned up). And "[s]econd, the NYCHRL does not require a plaintiff to show but-for causation. Instead, summary judgment is appropriate only if the plaintiff cannot show that retaliation played any part in the employer's decision." Dodd

(continued from previous page)
Depository Tr. & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010) (§ 1981); Treglia, 313 F.3d at 719 (ADA).

[10] Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013); accord Comcast, 140 S. Ct. at 1019 (§ 1981 claims); Natofsky v. City of New York, 921 F.3d 337, 348 (2d Cir. 2019), cert. denied, 140 S. Ct. 2668 (2020) (ADA claims).

v. City Univ. of N.Y., No. 17 Civ. 9932 (PAE), 2020 WL 5750715, at *37 (S.D.N.Y. Sept. 25, 2020) (quotation marks omitted).

**3. FMLA**

"[T]o make out a prima facie case" of FMLA retaliation, a plaintiff "must establish that: 1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004) (underlining added).

**d. Hostile Work Environment**

Finally, Plaintiff asserts hostile work environment claims under Title VII, § 1981, the NYSHRL, and the NYCHRL. (See FAC ¶¶ 51-61, 65-68, 72-78, 82-90.) Unlike claims for retaliation and discrimination, hostile work environment claims "are not analyzed using the McDonnell Douglas three-part burden-shifting test." Spence v. Bukofzer, No. 15-CV-6167 (ER), 2017 WL 1194478, at *6 (S.D.N.Y. Mar. 30, 2017).

**1. Title VII, § 1981, & NYSHRL**

The same standards apply to hostile work environment claims brought under Title VII, § 1981, and the NYSHRL.[11] To establish

[11] See Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 20 & n.4 (2d Cir. 2014). "However, Section 1981 deals only with race-based forms of discrimination." Parra v. City of White Plains, 48 F. Supp. 3d 542, 551 n.2 (S.D.N.Y. 2014).

a hostile work environment claim under those statutes, Plaintiff must show that her "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Wiercinski v. Mangia 57, Inc., 787 F.3d 106, 113 (2d Cir. 2015). "[T]he conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir. 2014). "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003) (quotation marks omitted).

"[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances," including, among others, (1) "the frequency of the discriminatory conduct"; (2) "its severity"; (3) "whether it is physically threatening or humiliating, or a mere offensive utterance"; and (4) "whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). Even so, a claim will only lie if the plaintiff "can also demonstrate that the hostile work environment was caused by animus towards her as a result of her membership in a protected class."

Bermudez v. City of New York, 783 F. Supp. 2d 560, 578 (S.D.N.Y. 2011). "Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe," but "[t]hey are not intended to promote or enforce civility, gentility or even decency." Isbell v. City of New York, 316 F. Supp. 3d 571, 591 (S.D.N.Y. 2018).

Because "Title VII claims are not cognizable against individuals," Patterson v. Cnty. of Oneida, 375 F.3d 206, 226 (2d Cir. 2004), a plaintiff must establish "a specific basis . . . for imputing the conduct that created the hostile environment to the employer," Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997). Liability turns, in part, on the status of the harasser. "If the harassing employee is the victim's co-worker"--as all of the alleged harassers are in this case[12]--"the employer is liable only if it was negligent in controlling working conditions." Vance v. Ball State Univ., 570 U.S. 421, 424 (2013). Under the standard, liability will run to the employer only "if the plaintiff demonstrates that the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." Rojas v.

[12] The relevant statements were allegedly uttered by Ms. Harris, a secretary, Ms. Douglas, a nursing assistant, Ms. Nelson, a fellow nurse, and Ms. Wynter, another fellow nurse. (See Defs. 56.1 ¶¶ 41-43, 74-87.) None had any supervisory authority over Plaintiff. (See id. ¶¶ 6, 84-87.)

Roman Catholic Diocese of Rochester, 660 F.3d 98, 107 (2d Cir. 2011) (quotation marks removed). Employer liability can be established in the same manner under § 1981 and the NYSHRL. See Lamarr-Arruz v. CVS Pharmacy, Inc., 271 F. Supp. 3d 646, 658-59 (S.D.N.Y. 2017).

Unlike Title VII, liability may run to individuals under § 1981 and the NYSHRL. "A claim seeking personal liability under [§] 1981 must be predicated on the actor's personal involvement." Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 75 (2d Cir. 2000). Conversely, the NYSHRL authorizes individual liability (1) for "individuals with ownership interest or supervisors, who themselves, have the authority to hire and fire employees," Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 365-66 (S.D.N.Y. 2012); and (2) "where the defendant aided and abetted the unlawful discriminatory acts of others," Xiang v. Eagle Enters., LLC, No. 19 Civ. 1752 (PAE), 2020 WL 248941, at *5 (S.D.N.Y. Jan. 16, 2020). "[S]o long as the employer's conduct has also been found to be discriminatory under the NYSHRL" liability can flow to an individual who "actually participates in the conduct giving rise to a discrimination claim." Farmer, 473 F. Supp. 3d at 337.

**2. NYCHRL**

"Section 8-107(1)(a) of [the] NYCHRL makes it unlawful 'for an employer or an employee or agent thereof' to create a hostile

work environment." Dillon v. Ned Mgmt., Inc., 85 F. Supp. 3d 639, 658 (E.D.N.Y. 2015) (quoting N.Y.C. ADMIN. CODE § 8-107(1)(a)). The NYCHRL is "intended to be more protective than the state and federal counterparts," Schaper, 408 F. Supp. 3d at 398, and the NYCHRL's "liberal construction lowers the standard for a hostile work environment claim brought under its auspices," Baez v. Anne Fontaine USA, Inc., No. 14-CV-6621 (KBF), 2017 WL 57858, at *4 (S.D.N.Y. Jan. 5, 2017).

"[U]nder the NYCHRL, there are not separate standards for 'discrimination' and 'harassment' claims." Johnson v. Strive E. Harlem Emp. Grp., 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014). To make out a hostile work environment claim under the NYCHRL, the alleged conduct need not be "severe or pervasive." Mihalik, 715 F.3d at 113. "With that said, the NYCHRL, like Title VII and the NYSHRL, is still not a general civility code, and petty slights and trivial inconveniences are not actionable." Davis-Bell v. Columbia Univ., 851 F. Supp. 2d 650, 671 (S.D.N.Y. 2012) (quotation marks omitted). "The relevant consideration is whether there is a triable issue of fact as to whether the plaintiff 'has been treated less well than other employees' because of her [protected status]." Sotomayor v. City of New York, 862 F. Supp. 2d 226, 261 (E.D.N.Y. 2012) (quoting Williams v. N.Y.C. Hous. Auth., 872 N.Y.S.2d 27, 39 (1st Dep't 2009)).

Liability under the NYCHRL may be imposed against both employers and individuals. See N.Y.C. ADMIN. CODE § 8-107(1)(a). Employers are vicariously liable for their employees' conduct in the following circumstances:

> (1) where the offending employee "exercised managerial or supervisory responsibility" . . .; (2) where the employer knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take "immediate and appropriate corrective action"; and (3) where the employer "should have known" of the offending employee's unlawful discriminatory conduct yet "failed to exercise reasonable diligence to prevent [it]."

Zakrzewska v. New Sch., 928 N.E.2d 1035, 1039 (N.Y. 2010) (quoting N.Y.C. ADMIN. CODE § 8-107(13)(b)(1)-(3)). An individual, on the other hand, may be directly liable, "regardless of ownership or decisionmaking power," if he "actually participated in the conduct giving rise to plaintiff's . . . claim." Schaper, 408 F. Supp. 3d at 395 (alterations omitted). Likewise, the NYCHRL provides for aiding-and-abetting liability with the same standard as the NYSHRL. See N.Y.C. ADMIN. CODE § 8-107(6); Schaper, 408 F. Supp. 3d at 396.

**e. Statutes of Limitations**

**1. Title VII**

A Title VII plaintiff must file a charge of discrimination with the EEOC either 180 or 300 days after an "alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). "In a State that has an entity with the authority to grant or seek

relief with respect to the alleged unlawful practice”--such as New York--the 300-day limit applies. Nat’l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002). Once the EEOC issues a right-to-sue letter, the plaintiff has ninety days to file suit. See 42 U.S.C. § 2000e-5(f)(1). “A claim is time barred if it is not filed within these limits.” Nat’l R.R., 536 U.S. at 109.

**2. Section 1981**

The limitations period for § 1981 claims is four years. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382-83 (2004). That “limitations period is” not “tolled during the pendency of EEOC administrative proceedings.” Bowen-Hooks v. City of New York, 13 F. Supp. 3d 179, 209 (E.D.N.Y. 2014).

**3. NYSHRL & NYCHRL**

NYSHRL and NYCHRL claims “are time-barred unless filed within three years of the alleged discriminatory acts.” Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 238 (2d Cir. 2007). Although the Court of Appeals has not held as much, numerous courts have tolled the statute of limitations “during the period in which a complaint is filed . . . with the EEOC.” Taylor v. City of New York, 207 F. Supp. 3d 293, 302 (S.D.N.Y. 2016).

**4. ADA**

A plaintiff raising an ADA claim must file a charge with the EEOC within 300 days of the alleged unlawful activity. See Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999).

**5. FMLA**

A two-year limitations period applies to FMLA actions unless the employer's conduct was "willful," i.e., the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the" FMLA. Porter v. N.Y. Univ. Sch. L., 392 F.3d 530, 531 (2d Cir. 2004) (per curiam).

## III. Discussion

Plaintiff asserts claims for discrimination, retaliation, and hostile work environment under (1) Title VII, (2) § 1981, (3) the ADA, (4) the FMLA, (5) the NYSHRL, and (6) the NYCHRL. (See FAC ¶¶ 37-90.) The Court will address each in turn.

### a. Discrimination Claims

#### 1. Title VII, § 1981, NYSHRL, & NYCHRL

Consistent with McDonnell Douglas, the Court begins with whether Plaintiff has established a prima facie case of discrimination. See Comcast, 140 S. Ct. at 1019. Plaintiff alleges discrimination primarily on the basis of race but also suggests discrimination on the basis of sex, religion, and disability status. (See FAC ¶¶ 51-61, 65-68, 75-78.) The parties do not dispute that those categories are protected classes under the applicable statutes, nor do they contest that Plaintiff was qualified for her nursing position. Moreover, the termination of Plaintiff's employment undoubtedly both (1)

constitutes an "adverse employment action"[13] and (2) concerns the "mak[ing] and enforce[ment] of contracts."[14]  The discrimination element is the whole ballgame.

Defendants assert that Plaintiff has not discharged her burden because she "has made no allegation, and has presented no evidence, that the four decision makers who terminated [her] . . . possessed any discriminatory animus."  (Defs. Br. at 10.) Plaintiff counters that discriminatory intent can be inferred because Montefiore treated Plaintiff differently from other similarly situated employees.  (See Pl. Br. at 11-12.) Specifically, Plaintiff posits that (1) all the complaints against her "were allegedly from ethnic minorities," (2) she "was treated far more worse [sic] than her black co-workers and was subjected to racial commentary of a period of years," and (3) she would not have been terminated but for her race given that no discipline was imposed on any of her co-workers for making discriminatory comments to her.  (Id. at 12.)

Ultimately, the Court need not decide whether Plaintiff has made out a prima facie case.  Caselaw from the Court of Appeals

---

[13] See, e.g., Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004) (including "termination of employment" among a list of "materially adverse employment actions").

[14] See 42 U.S.C. § 1981(b) ("[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts . . . .").

"makes clear that a court may simply assume that a plaintiff has established a prima facie case and skip to the final step in the McDonnell Douglas analysis, as long as the employer has articulated a legitimate, nondiscriminatory reason for the adverse employment action." Howard v. MTA Metro-N. Commuter R.R., 866 F. Supp. 2d 196, 205 (S.D.N.Y. 2011) (underlining added). Defendants have plainly offered such an explanation for terminating Plaintiff's employment: Plaintiff repeatedly violated the Policy, as evidenced by four complaints involving racially derogatory remarks and other unprofessional behavior.[15] Consequently, the burden reverts to Plaintiff to show that Defendants' justification is pretextual. See Comcast, 140 S. Ct. at 1019. And on that front, she comes up wholly short.

Plaintiff can show pretext either "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Ibrahim v. N.Y. State Dep't of Health, 904 F.2d 161, 166 (2d Cir. 1990). She fails on both fronts because she offers absolutely nothing to show that

---

[15] See, e.g., Ruiz, 609 F.3d at 493 ("[E]vidence of employee misconduct . . . may . . . be used by an employer to show that it had a legitimate, non-discriminatory reason for plaintiff's termination."); Risco v. McHugh, 868 F. Supp. 2d 75, 109 (S.D.N.Y. 2012) ("On-the-job misconduct . . . always constitute[s] [a] legitimate and nondiscriminatory reason[ ] for terminating employment . . . ." (brackets omitted)).

Montefiore's explanation is pretextual.  To the contrary, the record is replete with evidence indicating that four separate complaints were received, each of which was investigated and corroborated, and the complaints and investigation files were reviewed by the Committee, which determined that Plaintiff's employment should be terminated.  (See Defs. 56.1 ¶¶ 7-56.)

Beyond conclusory denials in her Rule 56.1 Statement--which the Court has already found not to be entitled to credence, see Truitt, 2020 WL 4208452, at *1--Plaintiff offers only (1) her own testimony that she did not do any of the things alleged in the complaints and (2) her unsupported speculation that Ms. Lutz somehow "orchestrated [her] termination." (E.g., Maynard Decl. ¶¶ 5, 22-27.)  Both contentions miss the point for two reason.  First, only the Committee had the authority to terminate Plaintiff, and it exercised that prerogative without Ms. Lutz's participation.  (See Defs. 56.1 ¶¶ 45, 52.)  And second, when evaluating Defendants' justification, the Court looks "to what motivated the employer rather than to the truth of the allegations against the plaintiff." Vasquez v. Empress Ambulance Serv., Inc., 835 F.3d 267, 275 (2d Cir. 2016) (cleaned up).  Yet, Plaintiff points to nothing that even suggests that the Committee's decision was motivated by racial animus.

In short, the record shows that Montefiore made a good faith determination to terminate Plaintiff's employment.  Thus,

even assuming that Plaintiff established her prima facie case of discrimination, she plainly has failed to show that Defendants' proffered justification for terminating her is pretextual. Accordingly, summary judgment is required on her Title VII, § 1981, NYSHRL, and NYCHRL discrimination claims.

**2. ADA and FMLA**

Defendants maintain that it is unnecessary to consider the merits of Plaintiff's ADA and FMLA claims because those claims are untimely. (See Defs. Br. at 24.) Specifically, Defendants posit that Plaintiff's ADA and FMLA claims are time barred because Plaintiff did not file (1) an EEOC charge within 300 days of the alleged discrimination or (2) this action within two years of the purported unlawful conduct. (See id.) Plaintiff counters that her claims are timely because a three-year limitations period applies given that Ms. Lutz's decision to rotate "Plaintiff on the night-shift as retaliation show[ed] some intent." (Pl. Br. at 15.)

Plaintiff's question-begging argument misses the mark: She offers no evidence of a willful violation of her FMLA rights and cites no authority establishing a three-year limitations period for ADA claims. Consequently, the two-year limitations period applies to her FMLA claims and the 300-day limitations period governs her ADA claims. Applying those standards, it is patent that neither the FMLA claim nor the ADA claim is timely.

Those claims relate to (1) Defendants' not paying Plaintiff for certain leave and (2) Defendants' temporarily moving Plaintiff to the night shift after she returned from leave. (See Defs. 56.1 ¶¶ 57-65.) Those acts occurred, at the latest, in April 2016. (See id.) Yet, Plaintiff did not file her EEOC charges until February 2018, well outside the 300-day window for her ADA claim. (FAC ¶ 3.) Likewise, Plaintiff did not file the present action asserting her FMLA claim until September 27, 2018, more than two and a half years after the alleged unlawful conduct. (See Complaint, dated Sept. 27, 2018 [dkt. no. 15].) Based on those undisputed facts, Plaintiff's ADA and FMLA claims are plainly time barred. Thus, summary judgment is proper.

**b. Retaliation Claims**

**1. Title VII, § 1981, NYSHRL, & NYCHRL**

Next, the Court turns to Plaintiff's retaliation claims. Like her discrimination claims, the Court begins by examining whether Plaintiff has established a prima facie case. See Comcast, 140 S. Ct. at 1019. Plaintiff alleges retaliation arising out of her complaints regarding derogatory comments made by her co-workers. (See Pl. Br. at 13; see also FAC ¶¶ 51-58, 62-64, 69-71.) The parties' dispute centers on whether a causal connection exists between Plaintiff's reporting on her co-workers and her termination.

Defendants assert that Plaintiff cannot demonstrate causation because the events that led to her firing were already under way when she complained about her co-workers' remarks. (See Defs. Br. at 14-15.)  For support, Defendants point out that they "began investigating Plaintiff for making racist remarks in the workplace in May 2017"--"nearly seven months before her termination"--and that Plaintiff only raised her concerns at the culmination of that investigative process.  (Id. at 15.)  Plaintiff counters that she has established causation because Montefiore terminated her employment in "close proximity" to her lodging the complaints.  (Pl. Br. at 14.)

Whether Plaintiff has made her prima facie case is a close question.  She is undoubtedly correct that, for the purposes of her prima facie case, "proof of causal connection can be established indirectly by showing that protected activity is followed by discriminatory treatment."  Duplan v. City of New York, 888 F.3d 612, 626 (2d Cir. 2018).  However, "[i]t is [also] well established that an adverse employment action cannot serve as the basis for a retaliation claim if the action was set in motion before a plaintiff engaged in protected activity."  Wilkinson v. Nord Anglia Educ. Ltd., No. 17 Civ. 7421 (PAE), 2019 WL 3430662, at *10 (S.D.N.Y. July 30, 2019).  Given that, the Court assumes Plaintiff has made out a prima facie case and jumps to pretext.  See Howard, 866 F. Supp. 2d at 205.

The pretext issue is anything but close.  As discussed above, Defendants have justified their decision to terminate Plaintiff based on the four corroborated complaints made about her on-the-job performance.  (See Defs. 56.1 ¶¶ 7-37.) Defendants investigated the first complaint and issued a written warning on August 16, 2017, more than three months before Plaintiff raised her grievances.  (Id. ¶¶ 7-17.)  Defendants then scrutinized three more complaints between August and October 2017, each of which was corroborated.  (Id. ¶¶ 18-37.) Only on November 17, 2017, at the culmination of nearly six months of disciplinary proceedings, did Plaintiff first allege discrimination against her by her co-workers.  (Id. ¶¶ 38-43.) Put bluntly, although Plaintiff's disciplinary problems came to a boil when she was terminated in December 2017, by that point the stove had already been on for more than seven months.

To establish causation, Plaintiff relies only on temporal proximity.  (See Pl. Br. at 14-15.)  But "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."[16]  And Plaintiff offers no evidence--beyond conclusory

---

[16] Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001); see also Tomizawa v. ADT LLC, No. 13-CV-6366 (MKB) (LB), 2015 WL 5772106, at *7-*8 (E.D.N.Y. Sept. 29, 2015)
(continued on following page)

denials and vague conspiracy allegations--to suggest that the Committee's decision had anything to do with any protected activity. In fact, despite Plaintiff's groundless suggestion to the contrary, (see Pl. Br. at 13), the record evinces that the Committee was unaware of Plaintiff's complaints when it elected to terminate her, (see Defs. 56.1 ¶ 53.)

In sum, Plaintiff has failed to offer any evidence that Defendants' legitimate explanation for terminating her is pretextual. Consequently, summary judgment is appropriate on her Title VII, § 1981, NYSHRL, and NYCHRL retaliation claims.

#### 2. **ADA and FMLA**

Plaintiff's retaliation claims under the ADA and FMLA are time barred for the same reasons as her discrimination claims. Accordingly, summary judgment is required for those claims too.

---

(continued from previous page)
(granting motion for summary judgment on NYSHRL and NYCHRL claims where "a progressive series of disciplinary actions" began "months before" plaintiff engaged in protected activity and plaintiff relied only on temporal proximity and "his own subjective belief that Defendants' actions were retaliatory" to show causation); Dabney v. Christmas Tree Shops, 958 F.Supp.2d 439, 456 (S.D.N.Y. 2013) (granting summary judgment on Title VII and NYSHRL retaliation claims, despite temporal proximity between termination and protected activity, because "the termination was ultimately the product of an extensive period of progressive discipline" (quotation marks omitted)); Morisseau v. DLA Piper, 532 F. Supp. 2d 595, 614-15 (S.D.N.Y. 2008) (granting summary judgment on Title VII claim where "the road that led to plaintiff's termination began before plaintiff" engaged in protected activity and plaintiff relied "entirely on the temporal proximity between" the protected activity and her termination to show pretext).

**c. Hostile Work Environment Claims**

The Court turns its attention to Plaintiff's hostile work environment claims under Title VII, § 1981, the NYSHRL, and the NYCHRL. Those claims are premised on remarks made by Ms. Harris, Ms. Douglas, Ms. Nelson, and Ms. Wynter. (See Defs. 56.1 ¶¶ 74-83.) Specifically, Plaintiff recounts the following:

- Between 2013 and 2015, Ms. Harris repeatedly called Plaintiff a "snowflake." (Id. ¶¶ 43, 74.)
- Sometime in 2013, Ms. Douglas asked Plaintiff "[c]an I touch your hair?" and "does your husband pull your hair when you're having sex?" (Id. ¶¶ 42, 75.)
- In January 2014, Ms. Nelson called Plaintiff "blondie." (Id. ¶ 76.)
- Sometime before April 2015, Ms. Nelson told Plaintiff that "blonde people have no problems." (Id. ¶ 77.)
- In May 2015, Ms. Wynter called Plaintiff the "KKK." (Id. ¶¶ 41, 78.)
- In August 2015, Ms. Harris told Plaintiff she could be "the middle of an oreo cookie," that "white people are weird," and that "white people eat weird food," and she asked Plaintiff "why don't you do something with your hair?" (Id. ¶¶ 43, 79.)
- In December 2015, Ms. Douglas said that "white women are pigs and their houses are dirty." (Id. ¶¶ 42, 80.)
- In spring 2017, Ms. Nelson told Plaintiff that she was "not a religious person" and that Ms. Nelson had considered giving her a bible. (Id. ¶ 81.)

Only Ms. Harris admits to making any of the remarks alleged. (Id. ¶ 82.)

1. **Timeliness of Claims**

Defendants question the timeliness of Plaintiff's hostile work environment claims. (See Defs. Br. at 16-18.) Plaintiff does not address that argument, even in passing. It is well settled that "[w]here a defendant moves for summary judgment, and the opposing party fails to oppose the argument, courts will deem the claim abandoned and grant dismissal."[17] Even so, the Court still must examine Defendants' "submission to determine if [they] ha[ve] met [their] burden of demonstrating that no material issue of fact remains for trial." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

Recall that the relevant statutes of limitations are as follows: (1) 300 days for Title VII claims, see Nat'l R.R., 536 U.S. at 109; (2) four years for § 1981 claims with no tolling, see Jones, 541 U.S. at 382-83; Bowen-Hooks, 13 F. Supp. 3d at 209; and (3) three years for NYSHRL and NYCHRL claims, with tolling during the pendency of EEOC proceedings, see Kassner, 496 F.3d at 238; Taylor, 207 F. Supp. 3d at 302. That leaves the following last accrual dates for each claim:

- Title VII: The accrual date is April 29, 2017, i.e., 300 days before the EEOC charges were filed on February 23, 2018. (See FAC ¶ 3.)

[17] Alexander v. Westbury Union Free Sch. Dist., 829 F. Supp. 2d 89, 112 (E.D.N.Y. 2011); see also Jackson v. Fed. Express, 766 F.3d 189, 197-98 (2d Cir. 2014) (granting summary judgment on claims where plaintiff failed to oppose defendant's motion).

- Section 1981: The accrual date is September 27, 2014, i.e., four years before this action was commenced on September 27, 2018. (See Complaint at 16.)
- NYSHRL & NYCHRL: The accrual date is May 16, 2015, i.e., three years and 134 days before this case was filed. That figure includes the original limitations period as well as applicable tolling. (See id.; FAC ¶¶ 3-4.)

Based on those accrual periods, Plaintiff's Title VII hostile work environment claim is time barred because all the relevant statements were made before April 29, 2017. On that basis alone, summary judgment is proper as to that claim.

For the § 1981, NYSHRL, and NYCHRL claims, the issue is a bit more complicated because some of the statements were made during the limitations period and some were made before. Defendants assert that Ms. Douglas's 2013 statements and Ms. Nelson's 2014 statement calling Plaintiff "blondie"--which were uttered before September 2014--are untimely under all the relied-upon statutes. (See Defs. Br. at 17.) Likewise, Defendants posit that Ms. Nelson's April 2015 statement that "blonde people have no problems" and Ms. Wynter's May 2015 statement calling Plaintiff the "KKK" are untimely under the NYSHRL and the NYCHRL, but not § 1981. (See id.)

Pre-limitations conduct may be actionable under a hostile work environment theory if it is "sufficiently related" to events occurring during the limitations period. McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 77 (2d Cir. 2010). "Courts

should make an individualized assessment of relatedness, considering whether as a matter of law that the acts before and after the limitations period were so similar in nature, frequency, and severity that they must be considered to be part and parcel of the hostile work environment." Batista v. Waldorf Astoria, No. 13 Civ. 3226 (LGS), 2015 WL 4402590, at *6 (S.D.N.Y. July 20, 2015) (quotation marks omitted). But "sporadic, discriminatory actions, taken by different co-workers," fail to clear that "sufficiently related" hurdle.[18]

With those standards in mind, the Court agrees with Defendants: The pre-limitations activity is not sufficiently related to the during-limitations incidents "to be part of the same alleged hostile work environment practice." McGullam, 609 F.3d at 77. For her part, Plaintiff offers no explanation relating the untimely utterances to the timely ones. In fact, from a review of the record, the opposite seems to be true: The alleged conduct was undertaken by different co-workers with the timely and untimely events being separated by months or even years. For example, Ms. Wynter is not alleged to have made any

[18] Maxton v. Underwriter Labs., Inc., 4 F. Supp. 3d 534, 544 (E.D.N.Y. 2014); see also Grimes-Jenkins v. Consol. Edison Co. of N.Y., Inc., No. 16-CIV-4897 (AT) (JCF), 2017 WL 2258374, at *12 (S.D.N.Y. May 22, 2017) ("[U]ntimely acts and timely acts of harassment are not sufficiently related when they are committed by different coworkers in a different section of the workplace." (cleaned up)).

other comments to Plaintiff, either before or during the
relevant limitations periods.  Likewise, although Ms. Douglas
made a remark to Plaintiff during the limitations period, that
statement was more than two years removed from her other alleged
comment and concerned an entirely different subject.  Ms. Nelson
is in a similar position:  Her timely comment was made years
after her untimely ones.  Those facts severely undermine any
contention that the pre-limitations statements relate to those
made during the limitations period.

What then remains?  For Plaintiff's NYSHRL and NYCHRL
claims, the following: (1) Ms. Harris's calling Plaintiff a
"snowflake"; (2) Ms. Harris's August 2015 statements; (3) Ms.
Douglas's December 2015 comment; and (4) Ms. Nelson's 2017
remark.  As for Plaintiff's § 1981 claim, Ms. Nelson's and Ms.
Wynter's 2015 statements are also fair game.  Whether these
remaining statements are sufficient to avoid summary judgement
is considered below.

### 2. Employer and Individual Liability

Next, Defendants assert that Plaintiff cannot impute
liability to Montefiore based on the individual defendants'
actions.  (See Defs. Br. at 19-21.)  Plaintiff counters that
holding Montefiore liable is proper because its response to her
harassment was inadequate.  (See Pl. Br. at 8-10.)  Plaintiff
makes the following (at times conflicting) accusations: (1)

Montefiore did not stop the harassment of Plaintiff to the point that she had to involve law enforcement; (2) Montefiore did not investigate all of the alleged harassment, in contravention of its policy; (3) it is unclear whether Montefiore disclosed all investigative materials to her; (4) interview notes and records were either not maintained or were destroyed; and (5) Montefiore did not notify Plaintiff that an investigation could take longer than thirty days. (See id. at 8-9.)

But Plaintiff cites absolutely nothing in the record to support those accusations. The Court's independent review of the record revealed no such evidence either. To the contrary, the record shows that none of the alleged harassers had any supervisory authority over the Plaintiff, (Defs. 56.1 ¶¶ 6, 84-87), which forecloses one avenue for establishing vicarious liability from the start.[19] Given that the harassment was perpetrated by her co-workers, Plaintiff must show that Montefiore (1) either knew or should have known of it and (2) did not take corrective action to stop it. See Rojas, 660 F.3d at 107; N.Y.C. ADMIN. CODE § 8-107(13)(b)(1)-(3). She cannot.

[19] See Vance, 570 U.S. at 424 ("If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable."); Zakrzewska, 928 N.E.2d at 1039 (providing for employer liability under the NYCHRL "where the offending employee exercised managerial or supervisory responsibility" (quotation marks omitted)).

Although Plaintiff alleges instances of harassment over several years, she did not report anything to Montefiore until November 2017, even though Montefiore provided numerous channels through which she could do so.  (See Defs. 56.1 ¶¶ 41-43, 68-70.)  Montefiore obviously could not have taken immediate corrective action regarding the conduct underlying the complaints because it was only made aware of the conduct months or years later.  And after Plaintiff reported the alleged harassment, it does not appear that the conduct continued: Plaintiff identifies no more statements after November 2017. Her accusations that Montefiore failed to investigate and took no corrective action do not alter that calculus.  Accordingly, Plaintiff cannot impute the individual defendants' conduct to Montefiore under § 1981, the NYSHRL, or the NYCHRL.[20]

Defendants also aver that, "because the individual defendants were not managers or supervisors, Plaintiff does not have a direct cause of action against [her] coworker defendants."  (Defs. Br. at 20.)  That contention proves a bit too much.  Individual liability can lie under § 1981, the

---

[20] The Court again observes that the standards for imputing an employee's conduct to the employer are identical under Title VII, § 1981, and the NYSHRL.  See Vance, 570 U.S. at 424; Lamarr-Arruz, 271 F. Supp. 3d at 658-59.  Because "Title VII claims are not cognizable against individuals," Patterson, 375 F.3d at 226, this conclusion constitutes an alternative ground supporting summary judgment on Plaintiff's Title VII hostile work environment claims.

NYSHRL, and the NYCHRL without the individual occupying a supervisory role. Both § 1981 and the NYCHRL, for example, allow for individual liability where the individual was personally involved, which the individual defendants obviously were because they allegedly made the statements. See Whidbee, 223 F.3d at 75; Schaper, 408 F. Supp. 3d at 395.

But individual liability under the NYSHRL is another story. Unlike § 1981 and the NYCHRL, mere personal involvement in the alleged harassment is not enough. Instead, for employees who are not owners or supervisors, personal liability will flow only if the individual "aided and abetted the unlawful discriminatory acts of others." Xiang, 2020 WL 248941, at *5. Yet, such liability is solely "derivative," i.e., the employer must be liable as a principal for a hostile work environment. See, e.g., Osborne v. Moody's Invs. Serv., Inc., No. 1:17-CV-01859 (ALC), 2018 WL 1441392, at *7 (S.D.N.Y. Mar. 22, 2018). As discussed above, however, Plaintiff cannot impute liability to Montefiore. It follows, then, that the individual defendants cannot be liable under an aiding-and-abetting theory. (See id.) Summary judgment is appropriate on Plaintiff's NYSHRL hostile work environment claim.

### 3. **The Remaining Claims**

The funnel has further narrowed: Only Plaintiff's § 1981 and NYCHRL claims against Ms. Harris, Ms. Douglas, Ms. Wynter,

and Ms. Nelson remain.[21] As for those claims, Defendants aver that they too fail "because the alleged comments do [sic] not amount to a hostile work environment." (Defs. Br. at 21.) Plaintiff barely addresses this argument, offering only one assertion that "[t]he comments at Plaintiff's place of employment for several months are clearly not a petty slight and trivial inconvenience." (Pl. Br. at 10.)

Plaintiff's claims under § 1981 fail. As an initial matter, § 1981 deals only with race-based discrimination, Parra, 48 F. Supp. 3d at 551 n.2, so Ms. Nelson's comment regarding Plaintiff's religion is outside its ambit. As for the remaining statements, even taken together they are not so "severe or pervasive" that a reasonable person would find the workplace "hostile or abusive." Raspardo, 770 F.3d at 114. "For racist comments, slurs, and jokes to constitute a hostile work environment, . . . there must be more than a few isolated incidents of racial enmity." Aulicino v. N.Y.C. Dep't of Homeless Servs., 580 F.3d 73, 83 (2d Cir. 2009) (quotation marks omitted). In other words, "instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (brackets omitted). The Court finds that the remarks at issue

[21] As discussed above, the Court has already found that Ms. Wynter's statement may only be considered under § 1981.

here--which were made by four different co-workers over the course of three years--simply "are not continuous enough to be considered 'pervasive' by a rational juror." Davis-Bell, 851 F. Supp. 2d at 673. Summary judgment is warranted on Plaintiff's § 1981 claim.

Even though the NYCHRL imposes a lower liability standard than § 1981, Title VII, or the NYSHRL, see Baez, 2017 WL 57858, at *4, Plaintiff's NYCHRL claims suffer the same fate. The NYCHRL still does not impose "a general civility code," and "[i]solated incidents of unwelcome verbal conduct have been found to constitute the type of petty slights and trivial inconveniences that are not actionable." Alexander v. Possible Prods., Inc., 336 F. Supp. 3d 187, 195 (S.D.N.Y. 2018). That aptly describes the facts here. As mentioned above, the relevant statements--though certainly unwelcome and upsetting--were made by a handful of different co-workers spread out over more than three years. Moreover, those remarks do "not reflect obvious discrimination or speak to [Plaintiff's] standing in the workplace, even if they were unkind." Duverny v. Hercules Med. P.C., No. 18-CV-07652 (DLC), 2020 WL 1033048, at *11 (S.D.N.Y. Mar. 3, 2020). With that in mind, the Court finds that the alleged comments are insufficient to support a hostile work

environment claim, "even under the liberal NYCHRL standard."[22] Summary judgment is in order.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment [dkt. no. 52] is GRANTED. The Clerk of the Court shall mark the action closed and all pending motions denied as moot.

**SO ORDERED.**

Dated: February 4, 2021
New York, New York

LORETTA A. PRESKA
Senior United States District Judge

[22] Alexander, 336 F. Supp. 3d at 195; see also Mullins v. Consol. Edison Co. of N.Y., Inc., No. 13 Civ. 6800 (LGS), 2015 WL 4503648, at *13 (S.D.N.Y. July 22, 2015) (finding that "occasional jokes" and other comments by the defendant were non-actionable under the NYCHRL). Additionally, because summary judgment is proper on the NYCHRL claims, it follows a fortiori that summary judgment would also be appropriate on her Title VII and NYSHRL claims.